**In the Matter of Frank D. MEYERS, Debtor.**

**CREDITHRIFT OF AMERICA, INC., a Michigan corporation, Plaintiff,**

v.

**Franklin D. MEYERS, Defendant.**

**Bankruptcy No. 75–03571–B.**
**Adversary No. 79–0058–B.**

United States Bankruptcy Court, E. D. Michigan.

Feb. 4, 1980.

Douglass H. Shermeta, Troy, Mich., for plaintiff.

Professional Legal Centers by William M. Crawforth, Detroit, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This is an action instituted by Credithrift of America, a Michigan corporation (herein-

after referred to as "Credithrift"), to reclaim property claimed as exempt by the debtor.

The facts are not in dispute. On October 23, 1979, Frank D. Meyers (hereinafter referred to as the "debtor") filed a voluntary petition in bankruptcy. In his schedules, he claimed as exempt, pursuant to Section 522(d)(6) of the Bankruptcy Reform Act of 1978 (Public Law 95–598) (hereinafter referred to as the "Bankruptcy Code"), a 1973 Dodge pick-up truck.[1] The truck was subject to a security interest which the debtor had given to Credithrift as collateral for a loan that he obtained in 1978. Relying on its security interest, Credithrift filed a complaint to reclaim the truck. The debtor moved to dismiss the complaint contending that the truck is a tool of his trade and, therefore, Credithrift's security interest is void by virtue of Section 522(f).

The parties have stipulated that Credithrift has a valid nonpurchase-money security interest in the pick-up truck, that the outstanding indebtedness on the loan subject to Credithrift's security interest is $1,106.95, and that the pick-up truck has a market value of $650.00.

Under pre-Code law, a security interest in exempt property was not affected by the debtor's discharge in bankruptcy. *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). Section 522(f) of the Bankruptcy Code markedly changes pre-Code law. Section 522(f) enables a debtor to avoid a nonpossessory, nonpurchase-money security interest in certain enumerated property, including tools of the trade of the debtor which the debtor claims as exempt.[2]

---

[1] Under pre-Code law, a bankrupt was able to claim as exempt, property which was allowable as exempt by federal law or by state law. § 6 of the Bankruptcy Act. The Code takes a different approach. It contains its own exemption provisions, (§ 522(d)) but gives the debtor the option of electing to take the federal exemptions or the exemptions provided under federal non-bankruptcy law and state law. § 522(b)(2)(A) and (B).

[2] Section 522(f) in its entirety reads as follows:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that

The issues simply presented are whether the debtor's truck is a tool of his trade and, if it is, whether the security interest of Credithrift may be avoided by the debtor under Section 522(f).

The question as to whether a motor vehicle qualifies as a tool of trade arises under state exemption statutes which essentially provide that "the tools, team and implements, or stock in trade of any . . . person, used and kept for the purpose of carrying on his trade or business, . . . shall be exempt . . . ." § 89–2992, Rev.St.Wyo.1931. In deciding this question under such statutes, courts have looked to the facts and circumstances of each case. "In cases of this character there is one question of prime importance, the answer to which inevitably determines the judgment, namely: Will the debtor be deprived, by the seizure and sale of the property involved, of a tool or instrument necessary for the exercise of his calling, trade or profession? There is, of course, a corollary to this question: Will the loss of the property seized prevent the debtor from continuing to follow the calling, trade or profession in which he has been engaged, and in which the particular property has been used?" *Holt v. Flournoy*, 24 So.2d 171, 173 (La.App.1945). Adopting this approach, the courts generally have held that a motor vehicle is a tool of trade, but only if the motor vehicle is necessary to and used by the debtor to carry on his trade. Thus, it has been held that a motor vehicle is a tool of trade when used by a salesman (*Matter of Pioch*, 235 F.2d 903 (3rd Cir. 1956)); by a sales manager who was required to make numerous visits to customers and frequent trips to the company's branch offices, and who was required by his contract of employment to provide his own car (*In re Trotter*, 97 F.Supp. 249 (D.C.La.1951)); by an independent insurance adjuster who was required to make insurance investigations in the city and surrounding rural areas (*Gunn v. Credit Service Corp.*, 46 So.2d 628 (La.App.1950)), and by a construction foreman, who used the motor vehicle for errands and to transport workmen and tools, and where the testimony established that he could not have kept his job as foreman without the automobile (*Dowd v. Heuson*, 122 Kan. 278, 252 P. 260 (1927)). But a motor vehicle is not exempt if it is not necessary to, nor used by the debtor to carry on his trade. *Britt v. Merritt*, 56 So.2d 766 (La.App.1952); *Holt v. Flournoy, supra; Jones v. Scott*, 167 So. 117 (La.App.1936), and *Morris-Wilson Buick Co. v. Robertson*, 146 So. 339 (La.App.1933).

The conclusion that a motor vehicle is a tool of trade only if it is necessary to, and is used by the debtor to carry on his trade, is more easily reached under the Bankruptcy Code. The federal exemption provisions are very liberal. Congress apparently wanted to insure that a debtor would be accorded a realistic fresh start. The Bankruptcy Code not only permits a debtor to claim as exempt tools that enable him to carry on his trade, but also permits him to claim as exempt a motor vehicle regardless of the purpose for which it is used. § 522(d)(2). In providing for separate exemptions for tools of trade and a motor vehicle, Congress clearly did not intend that a motor vehicle automatically qualify as a tool of trade. Cf. *In re Temple*, 20 F.Supp. 593 (D.C.Ohio 1937).

An analysis of the factors that motivated the enactment of Section 522(f), aids in reaching the same conclusion. Congress, in adopting Section 522(f), did not intend to make it possible for a debtor to avoid all nonpossessory, nonpurchase-money security interests in exempt property. Lending institutions generally have required a consumer-debtor to convey a security interest in household goods or tools of

are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

trade as a condition of making a loan. The lending institutions took a security interest in such property, not because of the intrinsic value of the property, but because of the leverage it gave them in a bankruptcy proceeding. When the debtor filed a petition in bankruptcy, the secured creditor would threaten to repossess the property subject to its security interest unless the debtor reaffirmed his debt. Such property usually has little realizable market value, but the replacement cost is high, and thus the creditor was able "to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess." H.R.Rep.No.595, 95th Cong., 1st Sess. 127 (1977), U.S.Code Cong. & Admin.News 1978, pp. 179, 304. A creditor can no longer exert this pressure with respect to property enumerated in Section 522(f), if the property is claimed and allowed as exempt. However, since Section 522(f) does materially affect the rights of secured creditors, its application should not be extended beyond the evil it attempted to reach. Lending institutions which make loans to consumer-debtors serve a legitimate purpose in our credit-oriented society. Congress did not intend to place all nonpurchase-money secured loans in jeopardy when the debtor filed a bankruptcy petition. A motor vehicle is a legitimate source of security. It is not the kind of collateral that gave rise to the problems with which Section 522(f) was concerned. "Consequences cannot alter statutes, but may help to fix their meaning." *In re Rouss*, 221 N.Y. 81, 91, 116 N.E. 782, 785 (1917). Restricting a debtor's claim of exemption of a motor vehicle as a tool of trade to cases in which the motor vehicle is necessary to, and used by the debtor to carry on his trade, accomplishes what was intended by Section 522(f).[3]

■ The debtor was employed by Chrysler Corporation to operate a fork-lift truck, commonly called a "Hi-lo," to transport various materials within the plant. He is not required to, nor does he use his truck to perform these services. The truck which the debtor claims as exempt, is used by him merely to go to and from work. Other means of transportation are available. The loss of the truck will not prevent the debtor from continuing to pursue his trade. The truck is an allowable exemption by virtue of Section 522(d)(2), but it is not a tool of the debtor's trade within the meaning of Section 522(d)(6).

■ While the debtor may not avoid Credithrift's security interest, an alternative remedy is available to him. Since the security interest in exempt property under pre-Code law was not disturbed by a debtor's discharge in bankruptcy, the creditor could repossess the collateral, regardless of its value, if the debtor did not pay the total indebtedness. *Long v. Bullard, supra.* Under the Bankruptcy Code, however, an individual debtor may "redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt . . ," if the property is claimed as exempt or has been abandoned by the trustee, "by paying the holder of such lien the amount of the allowed secured claim . . . ." § 722. A secured creditor's claim is allowable as a secured claim, but only to the extent of the value of the collateral. § 506(a). Credithrift, therefore, has an "allowed secured claim" of $650.00. Since the lien of Credithrift secures a consumer debt and since the truck is property of a kind described by Section 722, the debtor may retain the truck, if he so elects, upon payment of its present market value of $650.00.

An appropriate order to be submitted.

---

**3.** Most consumer loans are made by small loan companies licensed under the Small Loan Business Act. M.S.A. § 23.667. The property enumerated in § 522(f) is usually all the property that a consumer-debtor has, other than a motor vehicle and a home. The Small Loan Business Act specifically prohibits any licensee under the Act to "take a lien upon real estate as security for a loan . . . ." M.S.A. § 23.-667(12); M.C.L.A. § 493.12. In light of this provision and § 522(f), if it were additionally held that a motor vehicle encumbered by a nonpurchase-money security interest was subject to avoidance in bankruptcy if the debtor claimed the motor vehicle as exempt, regardless of its use, small loan companies would be compelled for all practical purposes to make unsecured loans only. It is doubtful whether the Bankruptcy Code intended to have this impact upon the small loan companies.