In re Robert J. DAMRON, Jr., Nancy Damron, Debtors.

FIRST HARDIN NATIONAL BANK, Plaintiff,

v.

Robert J. DAMRON, Jr., Nancy Damron, Defendants.

Bankruptcy No. 38000112.
Adv. No. 3800115.

United States Bankruptcy Court, W. D. Kentucky.

July 28, 1980.

Mark Watson, Elizabethtown, Ky., for plaintiff.

Thomas E. Cooper, Elizabethtown, Ky., for defendant.

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

MEMORANDUM AND ORDER

This action stems from a complaint by First Hardin National Bank (hereinafter the bank) to lift the automatic stay provided by 11 U.S.C. § 362. The bank contends that it holds a security interest in two vehicles owned by the debtors, Nancy and Robert J. Damron, Jr.

The Damrons seek avoidance of the bank's lien under 11 U.S.C. § 522(f)(2)(B)[1]

___

1. This provision reads as follows:
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under sub-

by claiming that their automobiles are "tools of their trade".

On October 1, 1979, the bank advanced to the Damrons a total of $2,857.69, not inclusive of fees and finance charges. To secure this sum, the bank took a security interest in two 1973 automobiles owned by the Damrons.

Because Section 522(f)(2) only permits the avoidance of a lien which is a non-purchase money, non-possessory security interest, the threshold question is whether or not such a security interest exists. Plaintiff contends that the security interest is purchase money.

■ By definition,[2] a purchase money security interest is one which is taken or retained by the seller of an item to secure *its price or taken by a person who advances funds to enable one to acquire rights in the collateral.*

■ The taking of a security interest in property which is already owned by the debtor results in the creation of merely a *non-purchase* money security interest.

■ In this case, the bank did not advance money to the Damrons so they could purchase the vehicles in which the security interest was taken. The loan was in the nature of a renewal, with the Damrons' already-owned vehicles taken as collateral.

That question being resolved, we address *the more substantive issue of whether the* lien on the Damrons' vehicles may be avoided because they are tools of their trade.

In *Credithrift of America, Inc. v. Dubrock,*[3] decided today, this Court analyzed prior decisions in which automobiles were claimed exempt as tools of trade. Whatever the outcome, the thread of reasoning that runs throughout those cases was that the ultimate determination was dependent on the unique facts of the individual case.

The prevailing expression of law is that a tool-of-trade exemption could be given to a motor vehicle which is necessary for, and used by the debtor in, his business.[4]

That principal comports with the Damrons' contention that "a motor vehicle should be characterized according to the debtor's use of such item".[5] Though we fully agree with that statement, we disagree with the debtors' application of it to these facts.

Mrs. Damron argues that she needs her automobile to commute to work at an area factory. Because she lives in a rural area, alternative means of transportation are not available.

■ But these facts alone are incapable of supporting a finding that Mrs. Damron's car is a tool of her trade. Her ownership and use of a car is wholly unrelated to her occupation as a factory worker. Once she punches the time clock, her car sits idle in the parking lot.

An automobile should not automatically qualify for a tool-of-trade exemption. The Bankruptcy Reform Act is of recent vintage, and those responsible for its passage were certainly aware of the average American's dependence on the automobile as a routine mode of transportation. Yet, there is no provision in the Code for avoiding a lien on an automobile as a "tool" per se. We will not presume to write one.

The use made by Mr. Damron of his automobile likewise is not so substantially related to his employment as a service station mechanic to warrant its treatment as a tool of trade.

It is contended that Mr. Damron,

"uses one of the vehicles to get to his place of employment and uses it in his

---

section (b) of this section, if such lien is—
(2) a nonpossessory, nonpurchase-money security interest in any—
(B) implements, professional books, or tools, of the trade of a debtor or the trade of a dependent on the debtor; or—

**2.** Ky.Rev.Stat. 355.9–107.

**3.** 5 B.R. 353.

**4.** *Credithrift of America v. Meyers,* 2 B.R. 603, 5 BCD 1306 (E.D.Mich.1980); *Sun Ltd. v. Casey,* 96 Cal.App.3d 38, 157 Cal.Rptr. 576 (1979); *Holt v. Flournoy,* 24 So.2d 171 (La.App. 1945).

**5.** Brief for defendants at 2, *First Hardin National Bank v. Damron,* 38000105.

employment to carry tools and to provide necessary transportation in his occupation to job sites and for use in procuring and delivering parts for other vehicles and items which he may repair and work on as a mechanic." [6]

Though the use Mr. Damron claims he makes of his automobile goes somewhat beyond his routine transportation needs, we hesitate to conclude that its connection with his trade is so extensive so as to require classification as a tool of trade.

A skilled tradesman has generally been allowed a tool-of-trade exemption for his motor vehicle if that vehicle is uniquely equipped for use in the trade or if the nature of the trade requires its constant use.

In *In re Bailey*,[7] a painting contractor's panel truck used to carry paint, tarpaulins, ladders and brushes to jobs and which had been especially adapted for such use, was held to be a tool of the trade.

Likewise, a plumber's truck was held entitled to the exemption, the Court considering that a plumber's work is rarely performed in the shop, and that he uses his truck as a workshop on wheels, traveling from site to site to conduct business.[8]

The exemption has also been applied to a pick-up truck used for mounting and re-mounting retread tires for various used car lots,[9] and to the car of a construction foreman who was employed for the purpose of using his car to run errands and to transport workmen and their tools.[10]

A tool-of-trade exemption was denied a railroad employee, however, who used his car for repair jobs at various points on a 50-mile stretch of railroad line and whose ownership of a car was not a requirement of employment.[11]

Though the previous decisions regarding the question provide some guidance, they cannot produce an answer. That must come solely from the facts of this case.

■ So far as we have been informed, this car has not been specifically adapted for use by a roving mechanic. The car is an unmodified 1973 Mercury. It is not equipped with accoutrements, such as a winch or towing mechanism, that would make it uniquely suitable for on-the-road vehicle maintenance. We therefore cannot equate this vehicle with those used by plumbers and painters and which are equipped so as to make them "travelling workshops".

We are unconvinced that Mr. Damron cannot function as a mechanic without a car. A mechanic normally plies his trade in a garage, we expect Mr. Damron will still be able to do so even without an automobile.

To dispel any impression that we are closing the door on the possibility that a car may be a tool of trade, we refer the reader to our accompanying decision of *Credithrift, Inc. v. Dubrock*,[12] in which we held that a real estate salesman's car was a tool of his trade. In *Dubrock*, there was a significant nexus between the debtor's occupation as a realtor and his use of an automobile. Without his car, the debtor was powerless to conduct his business.

Upon the foregoing reasoning and authorities, it is hereby

ORDERED that the lien held by the First Hardin Bank on the automobiles is fully enforceable, and it is FURTHER ORDERED that the automatic stay is hereby lifted to permit enforcement of that lien. This is a final order. Judgment shall be entered accordingly.

---

6. Id.

7. 172 F.Supp. 925 (D.Neb.1959).

8. *In re Spiewalk*, [1957–1970 Transfer Binder]. Bankr.L.Rep. (CCH) ¶62,893 (D.C.Calif.1968).

9. *Lopp v. Lopp*, 198 Cal.App.2d 474, 18 Cal. Rptr. 338 (1961).

10. *Dowd v. Heuson*, 122 Kan. 278, 252 P. 260 (Kansas 1927).

11. *Holt v. Flournoy*, supra note 4.

12. Supra, note 3.