In re James M. CUNNINGHAM Marilyn Jean Cunningham.

In re Mark Allen TABOR Judy Gail Tabor.

In re Robert Andrew ANASTASIO Linda Jean Anastasio.

In re Jerry Wayne BEAN Carolyn Bean.

In re Walter PHELPS Bonnie Lou Phelps.

In re Clarence Alonzo CLARK, Debtors.

Bankruptcy Nos. 1–80–00031, 4–80–00056, 4–80–00033, 4–80–00039, 4–80–00046 and 4–80–00067.

United States Bankruptcy Court, W. D. Kentucky.

April 29, 1981.

Nicholas Brown, Bowling Green, Ky., for debtors.

Chester Bays, Bowling Green, Ky., for creditor.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

Each of these bankruptcy cases originally came before the Court on motions of the debtors to avoid the respective creditors' liens pursuant to 11 U.S.C. § 522(f)(2). The loans in controversy are secured by nonpossessory, nonpurchase money security inter-

ests which impair the claimed and allowed exemption of the debtors. In all of the cases, the creditors timely raised the issue of the constitutionality of § 522(f). The affected creditors do not interpose other defenses to the debtors' motions. Since each case has a common and decisive issue of law within the meaning of Rule 42 of the Federal Rules of Civil Procedure as it is made applicable to bankruptcy proceedings by Rule 742 of the Rules of Bankruptcy Procedure, these controversies should be and are consolidated for the purposes of their determination here.

In the six cases pending before this Court, notice was given to the Attorney General of the United States pursuant to 28 U.S.C. § 2403(a) (1976). By letter dated October 8, 1980, the Attorney General declined to intervene in these cases for the stated reason that, "... [t]he United States had extensively briefed the issue of the constitutionality of this provision...." [11 U.S.C. § 522(f)] in other and more mature proceedings.

The Bankruptcy Reform Act of 1978, Pub.L.No.95–598, 92 Stat. 2549 (the Code), was enacted by Congress on October 6, 1978, and signed into law by President Carter on November 6, 1978. Title I codified and enacted the Code and provided in Section 402(a), Pub.L.95–598 § 402(a) that, "This Act shall take effect on October 1, 1979." The Code further stated that all cases commenced prior to October 1, 1979, would be conducted and governed by the provisions of the Bankruptcy Act of 1898 (the Act) and thereafter by the Code.

Section 522 provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) [1] of this section, if such lien is:

---

1. Repealed by the Kentucky legislature and signed into law by Governor Brown on April 9, 1980, pursuant to 11 U.S.C. § 522(b)(1), by the authorized action of the Commonwealth. Debtors filing bankruptcy petitions after the aforecited date are only entitled to claim the enacted group of state exemptions provided for in KRS 427, et al. The action by the Commonwealth of Kentucky denied those exemptions set forth in 11 U.S.C. 522(d).

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

## FACTS

1. *In Re Tabor*, Case No. 4–80–00056. The debtors, husband and wife, filed a joint bankruptcy petition on February 12, 1980. On July 18, 1980, the debtors filed a joint motion seeking to avoid one nonpurchase money security interest held by Credithrift of America, Inc., the security for the loan being various items of household furniture claimed and allowed exempt pursuant to 11 U.S.C. § 522(d)(1). The security agreement was executed on June 20, 1978.

2. *In Re Anastasio*, Case No. 4–80–00033. A joint bankruptcy petition was filed by the debtors on January 28, 1980. The debtors, on June 4, 1980, filed a motion seeking to avoid the nonpossessory security interest of CIT Financial Services of Kentucky pursuant to § 522(f). Perfection of this secured claim occurred on July 10, 1978. This loan agreement was refinanced on December 3, 1979, with principal and interest in the amount of $2,268.00. The debtors claimed and were allowed an exemption in the property which is the subject matter of CIT's security interest.

3. *In Re Bean*, Case No. 4–80–00039. The Beans filed a joint petition in bankruptcy on February 1, 1980. Subsequently, on February 22, 1980, a motion was filed seeking to avoid the lien of Kentucky Finance Company. Security for the loan was certain items of household furniture. As evidence of their claim Kentucky Finance filed two security agreements, one undated and the other dated November 1, 1978, in the amount of $525.91.

4. *In Re Phelps*, Case No. 4–80–00046. An original petition in bankruptcy was filed by the Phelps on February 5, 1980. Thereafter, a motion to avoid the lien of Kentucky Finance Company was filed pursuant to 11 U.S.C. § 522(f) on February 22, 1980. The security interest sought to be avoided was executed on November 7, 1975, and perfected on November 13, 1975.

5. *In Re Clark*, Case No. 4–80–00067. Alonzo Clark filed a voluntary petition in bankruptcy, and an order for relief was entered on February 19, 1980. The creditor, Circle Leasing of Kentucky Corporation, is a judgment lien creditor pursuant to a judgment in the Webster Circuit Court, Webster County, Kentucky, entered on June 19, 1979, in the amount of $17,681.87. The levy is against real property owned by the debtor.

6. *In Re Cunningham*, Case No. 1–80–00081. A joint bankruptcy case was commenced with the filing of an original petition on January 28, 1980. The debtors, by motion dated March 20, 1980, sought to avoid the nonpossessory, nonpurchase money lien held by Surety Industrial Loan Company. Surety holds two separate security agreements, one dated May 19, 1978, in the amount of $2,910.00, and the other dated July 12, 1979, in the amount of $416.00.

## ISSUE

Whether 11 U.S.C. § 522(f) can be constitutionally applied retroactively within the meaning of the proscriptions of the Fifth Amendment, to avoid validly perfected security interests.

## CONCLUSIONS OF LAW

Article I, Section 8, clause 4, expressly grants to Congress the power to legislate on the subject of bankruptcies.[2] This express

---

**2.** Article I, Section 8, clause 4, provides, "The Congress shall have power . . . to make uniform laws on the subject of bankruptcies throughout the land."

grant is further supported by the general authority provided under Article I, Section 8, clause 18, that, "The Congress shall have the power... to make all laws which are necessary and proper for carrying into Execution the foregoing powers...."

The supplemental argument by certain creditors that Section 522(f) is constitutionally prohibited by Article I, Section 10, of the Constitution of the United States is not legally well taken. Article I is limited by its application to states and the power exclusively reserved to the United States to legislate on the subject of bankruptcies includes the power to impair the obligations to contract. *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902); and *Bank of Minden, et al. v. Clement*, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857 (1921).

The purpose of laws which permit a debtor to exempt certain property from execution and levy by his creditors is not for the personal privilege or benefit of the debtor, but to avoid leaving the debtor and the debtor's dependent destitute with the subsequent burden residing on the public to support and maintain. It has long been the social policy in this country to place the burden on the debtor's creditors rather than on society in general. *In Re Perry*, 225 F.Supp. 481 (N.D.Ohio, 1963).

The drafters of subsection (f) found that the policy of former Section 6 of the Act (the exemption section) was frustrated by the threat of enforcement by a creditor of its nonpossessory, nonpurchase money and judicial liens. H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. II (1973).

Congress, by enacting 11 U.S.C. § 522(f) evidenced its desire to protect the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid the type of liens specified thereunder. Congress concluded that the enforcement of these kinds of interests resulted in an unfair advantage by the debtors' creditors. It was recognized that the collateral was of little monetary value, being of value not as

security in the event of default, but as a creditable basis for threat of foreclosure on the property. Although of little or nominal resale value, household property generally represents a high replacement cost. Rarely did creditors repossess such property, relying upon the ignorance of the debtor as to their true intentions, but used this threat to coerce a reluctant debtor to reobligate himself to a contract and payment that he could not afford. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 126–27 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; also, see *In Re Ambrose*, 4 B.R. 395, 6 BCD 454 (Bkrtcy.N.D.Ohio, 1980), citing *In Re Carter*, 56 F.Supp. 385, 393 (W.D.Va., 1944). This Court takes judicial notice that a creditor whose loan is secured by household goods is rarely willing to take the household goods in lieu of the debt in case of default.

The court recognizes the presumption in our laws that congressional legislation is constitutional, and that the burden is on the one complaining of a due process violation to establish that the legislature acted in an arbitrary and irrational way. *In Re Boulton*, 4 B.R. 498 (Bkrtcy.S.D.Iowa, 1980), citing *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). It is also uniformly held that the constitutionality of statutes is reserved to the appellate courts, and "...that when the trial court undertakes to pass upon the question it must be satisfied of the unconstitutionality beyond a reasonable doubt before so deciding." *In Re Baker, et al.*, 5 B.R. 397, 6 BCD 747, 749 (Bkrtcy.W.D.Mo., 1980), citing *Chrestensen v. Valentine*, 34 F.Supp. 596, 598 (S.D.N.Y.1940).

A clear reading of the subsection reveals congressional intent to have a majority of the provisions of the Code be applied retroactively rather prospectively. A contrary interpretation would result in a gap in the administration of our laws of bankruptcy. As stated by the Tenth Circuit, "If the Reform Act were applied only to those cases commenced after October 1, 1979, which involved security interests

which came into existence *after* that date, there would be *no* bankruptcy law applicable to cases filed after October 1, 1979, but involving security interests which were fixed prior to October 1, 1979. We cannot believe that Congress intended such a no-man's land. Based on such reasoning, we conclude that Congress intended for substantive provisions of the Reform Act, such as Section 522(f)(2), to be given retroactive effect to the end that such statutory provisions govern security interests that came into being before the effective date of the Reform Act." *In Re Rodrock, et al.*, 642 F.2d 1193 (10th Cir., 1981); also, *In Re Ambrose, supra.*

Since it is clear that Congress intended retroactive application of § 522(f), the Court must resolve the question of whether such an application is violative of the Fifth Amendment to the Constitution of the United States.

The constitutionality of this provision has been vigorously and aggressively challenged since it became effective on October 1, 1979, and the first debtor attempted by either motion or complaint to realize its benefits. The numerous bankruptcy courts which have found § 522(f) constitutionally invalid have relied upon a case which originated in Kentucky, *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). See *In Re Hawley*, 4 B.R. 147, 6 BCD 365 (D.Oregon, 1980); *In Re Lucero*, 4 B.R. 659 (D.Colo., 1980); *In Re Jackson*, 4 B.R. 293 (D.Colo., 1980); *In Re Hoops*, 3 B.R. 635 (D.Colo., 1980); and *In Re Pierce*, 4 B.R. 671 (W.D.Okl., 1980).

In the *Radford* case, the Supreme Court found the provisions of the Frazier-Lemke Act of 1933, which amended Section 75 of the Bankruptcy Act unconstitutional. The Frazier-Lemke Act was depression era legislation intended to relieve beleaguered farmers by staying all proceedings against their farms by the mortgagee banks for five years. During this period, the farmer was permitted to retain possession provided he pay a reasonable rental fee. At the conclusion of the five years, or any time prior thereto, the debtor-farmer could obtain title to the property by paying its appraised value to the court.

The Court, following the law of Kentucky, found that the mortgagee was given certain enumerated rights, and therefore Section 75 of the Bankruptcy Act was invalid because it deprived the mortgagee of these rights. In denying retroactive application, the Court stated:

The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because unlike the states, it is not prohibited from impairing the obligations of contract. But the effect of the act here complained of is not the discharge of Radford's personal obligation. It is the taking of substantive rights in specific property acquired by the bank prior to the Act. 295 U.S. 589–590, 55 S.Ct. 863.

Not all property rights are immune nor inviolable from the congressional exercise; if it is bankruptcy, all that is required is that the limitations of due process are observed. In *Wright v. Union Central Life Insurance Company*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938), the Court redefined its *Radford* rule and clarified congressional power in exercise of its bankruptcy powers by stating:

Bankruptcy proceedings constantly modify and affect the property rights established by state law. A familiar instance is the invalidation of transfers working a preference, though valid under state law when made.

A court of bankruptcy may affect the interests of lienholders in many ways. To carry out the purposes of the Bankruptcy Act, it may direct that all liens upon property forming part of a bankrupt's estate be marshaled; or that the property be sold free of encumbrances and the rights of all lienholders be transferred to the proceeds of sale. 304 U.S. at 517, 58 S.Ct. at 1033; also see *In Re Chicago, R. I. & P. Ry. Co.*, 90 F.2d 312 (7th Cir., 1937); *Hanover National Bank v. Moyses, supra; Anderson National Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944); and *Campbell v. Alleghany Corp.*, 75 F.2d 947 (4th Cir., 1935).

In order for the statutory provisions to satisfy due process, they must be consonant with a fair, reasonable and equitable distribution of assets, and the affected creditors must be given an opportunity to be heard.

For the foregoing reasons, the Court concludes that 11 U.S.C. § 522(f) is unconstitutional as to those security interests perfected prior to November 6, 1978 (enactment date); and it is the further finding here that those security agreements consummated thereafter do not deprive the creditors of due process, and it is constitutionally permissible to apply subsection (f) to those agreements.

WHEREFORE, IT IS ORDERED AND ADJUDGED that motions filed to avoid nonpossessory, nonpurchase money liens on property within the meaning of Section 522(f) entered into prior to November 6, 1978, be and are overruled.

IT IS FURTHER ORDERED AND ADJUDGED that motions to avoid nonpossessory, nonpurchase liens acquired after November 6, 1978, be and are sustained and the liens avoided. 11 U.S.C. § 522(f).

A copy of this memorandum and order is mailed to all parties in interest.