**In re Arthur J. EAGAN, Jr., Debtor.**

**Arthur J. EAGAN, Jr., Plaintiff,**

v.

**HOUSEHOLD FINANCE CORPORATION,
Defendant.**

**Bankruptcy No. 80 00624.
Adv. No. 80 0162.**

United States Bankruptcy Court,
N. D. New York.

Jan. 15, 1982.

Stephen D. Gerling, Utica, N. Y., for plaintiff.

Lawrence A. Sardelli, Chadwicks, N. Y., for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

### Statement of the Case

Arthur J. Eagan, Jr. (hereinafter, the Debtor) filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. (hereinafter, the Code). The Debtor filed a complaint to void a security interest against the Debtor's estate held by a secured creditor, Household Finance Corporation (hereinafter, HFC) listed in the Debtor's schedules. The Debtor seeks to void the HFC security interest filed against a 1975 Chevrolet ¾ ton pickup truck pursuant to § 522(f) of the Code. The complaint further alleges that (1) before and

after the execution of the security interest agreement between the Debtor and HFC, the Debtor has utilized the said vehicle "in his farming operations and, in fact . . . still utilizes said vehicle in both part-time farming operations and in his part-time pursuit as an electrician."; and (2) the Debtor has claimed the vehicle exempt property as a "tool of the trade" and amended his B–4 exempt schedule accordingly.

The HFC answer disputes only the enumerated allegations above and interposes three (3) affirmative defenses. These defenses are as follows: First, the Debtor is not entitled to claim the said vehicle as a tool of the trade because the Debtor was neither engaged in business nor self-employed at the time of the petition's filing. Second, the Debtor did not include the vehicle in his exempt property schedule and that the value of this tool of the trade entirely exceeds the $750.00 limit of § 522(a)(6) of the Code. Lastly, should the Court allow the Debtor to exempt this vehicle, such exemption has a limit of $750.00 by operation of the Code § 522(d)(6) and § 522(f)(2)(B), and therefore, HFC's security interest is valid in the said vehicle "as to any excess (value) of $750.00." HFC's prayer for relief demands judgment dismissing the complaint and granting either possession of the vehicle or reasonable value for the HFC security interest with compensatory interest, costs, and disbursements thereof.

## FINDINGS OF FACT

Through documentary evidence and testimony of the Debtor the following facts were adduced at the hearing:

1. On or about August 28, 1979, the Debtor and HFC entered into a security interest agreement (Ex. P–1). This agreement supported a general purpose loan from HFC to the Debtor. The created security interest was a nonpossessory, nonpurchase-money security interest. A "Chevrolet P/U 1975" ¾ ton pickup truck was listed as the security collateral in the security agreement.

2. The Debtor filed a voluntary Chapter 7 petition in bankruptcy on May 9, 1980 (Ex. P–3). A "Statement of Financial Affairs for Debtor Engaged in Business" is attached. On October 24, 1980, the Debtor amended his B–4 schedule of property claimed as exempt, changing the declared Chevrolet truck (Ex. Def–B) to a "tool of trade" instead of "motor vehicle." (Ex. Def–A).

3. Prior to filing his bankruptcy petition, the Debtor was a self-employed dairy farmer on a plot on Castle Rd., Newport, New York. The activities at this location terminated in 1979 due to a fire. In the three (3) prior years the Debtor had been employed as a farmer.

4. The Debtor used the Chevrolet truck to draw hay, equipment, wagons, and transport cows. The truck was used on a daily basis up to the time he filed his petition. Since the petition date, the Debtor has utilized the same vehicle to farm on a rented parcel in Fonda, New York as a dairy farmer and to transport his tools and materials used in a part-time electrician position. The Debtor denied any use of the truck for purely personal reasons such as a mode of personal transportation.

5. The parties agree that the Chevrolet pickup truck has a fair market value of $2,500.00 which secures the HFC security interest and loan. (Ex. Def–B).

## DISCUSSION

The facts of this case are neither complicated nor exceptional. Rather, the facts give rise to several particular legal questions when they are applied to operative provisions of the Code. The parties memoranda correctly state the legal and factual issues as:

1. Does this Debtor's pickup truck qualify as a "tool of the trade" which can be claimed as exempt property pursuant to Code § 522(d)(6), 11 U.S.C. § 522(d)(6)?

2. Is § 522(f) of the Code, 11 U.S.C. § 522(f) unconstitutional when applied to a security interest which was created *after* the date of enactment of the new

Bankruptcy Code but was validly operative *before* the effective date of the Code?

3. If the pickup truck does qualify under § 522(d)(6) as exempt "tool of the trade" property, is not the limit of the Debtor's voiding power of an impairing security interest pursuant to § 522(f) set at the $750.00 amount specified in § 522(d)(6) with the balance of the property's value still subject to the HFC security interest rights?

### I.

■ The threshold question is whether the record supports a conclusion by this Court that the Debtor's pickup truck qualifies as a tool-of-trade under § 522(d)(6). Clearly, if the property is not exempt, the lien avoidance provisions of 11 U.S.C. § 522(f) are not applicable. *In re Coleman*, 5 B.R. 76, 79 (Bkrtcy., M.D.Tenn.1980). I must preface this issue by stating that this Court has previously held and maintains that "(b)eing a remedial statute, the exemption provisions of the Code should be liberally construed." *In re Robert P. Lane and Linda J. Lane*, Case No. 81 00099, slip op. at 3 (Bkrtcy., N.D.N.Y. August 12, 1981) (Marketos, J.). *See also, In re Coleman, supra*, 5 B.R. at 79. Neither the Code nor its legislative history defines "tools of the trade" nor does either source place any limitation on the words. Furthermore, in the federal bankruptcy exemption Congress chose value limitations as the principal means of defining the limits to which property can be exempted from the estate. *Id.*

Both parties cite the case of *Matter of Meyers*, 2 B.R. 603 (Bkrtcy., E.D.Mich.1980) for its criterion to determine whether a motor vehicle qualifies as a "tool of the trade". The *Meyers* court stated that "(C)ourts generally have held that a motor vehicle is a tool of trade, but only if the

motor vehicle is *necessary to* and *used by* the debtor *to carry on his trade.*" 2 B.R. at 605 (Emphasis added). Upon the record presented the Debtor has shown an almost exclusive, daily use of the truck in dairy farm related activities of towing equipment and transporting cows at both the past parcel and the presently rented farm site. HFC does not take issue that the Debtor is not presently a full-time dairy farmer, and the Court is unwilling upon this record to find the Debtor has "abandoned" such as his primary profession.[1]

On the issue of the "necessity .. to carrying on his trade" relationship between the Debtor-dairy farmer and the Debtor's pickup truck, HFC proffered several arguments. Simply stated, HFC contends that (1) the occupational use was a matter of convenience; (2) there is no showing that a pickup truck is a usual and necessary tool for the pursuit of the dairy farming trade; and (3) the Debtor-dairy farmer is not uniquely dependent on the pickup truck in order to continue his trade. The "convenience" argument connotes that the tasks for which the Debtor makes use of the truck could be accomplished by the Debtor using an alternative means. Yet, HFC sets forth no evidence of such alternatives. The second and third HFC contentions posit an unreal and static understanding of modern farming techniques. Query: does HFC desire this Court to deny a dairy farmer the benefits of modernized farming technology and equipment which is adaptable for towing by either a pickup truck or the possibly more traditional tractor? The Court is convinced that the Debtor necessarily uses this pickup truck to accomplish the tasks he encounters in his farming operations.[2]

This Court must look to the facts and circumstances of each case. *See Matter of Meyers, supra*, at 605. The Court must

---

1. As was observed in *In re Pommerer*, 10 B.R. 935, at 942 (Bkrtcy., D.Minn.1981) "Part-time employment as a truck driver to augment family income does not destroy his primary occupational pursuit... Abandonment of a trade requires an intentional abandonment."

2. The salient factual finding in *In re Damron*, 5 B.R. 357 (Bkrtcy., D.Ky.1980) which makes it inapposite and distinguishable from the case at bar was that debtor's lack of use of his motor vehicle was *not found to prevent* the debtor's functioning at the tasks of his profession as a car mechanic. *Id.*, at 359.

remind HFC that it is the use and the necessity of the vehicle itself to the debtor and not its modifications or "unique" suitability to the trade which, here, determine its status as a tool of the trade. *See Matter of Goosey*, 10 B.R. 285, 286 (Bkrtcy., D.Neb. 1981). The record substantiates and I conclude that this pickup truck qualifies as a tool of this Debtor's trade as a dairy farmer.[3]

## II.

Another contention of HFC is that the Debtor may not make a retrospective application of § 522(f) as such action is an unconstitutional taking of HFC's vested property right as embodied in its security interest agreement. Along with numerous other courts, this Court has already addressed the constitutionality issue raised by § 522(f) when it is applied to consensual liens created *prior* to the enactment date of the Code. This Court has held such application to be violative of due process under the United States Constitution's 5th Amendment. *See*

3. Of course, this exemption status classification mutually excludes the item to qualify under § 522(d)(2) as a motor vehicle. *See Matter of Moore*, 5 B.R. 669, 670 (Bkrtcy., S.D.Ohio W.D.1980); *In re ABT*, 2 B.R. 323, 326 (Bkrtcy., E.D.Pa.1980).

4. For an extensive compilation of cases considering the constitutionality of a lien avoidance under § 522(f) in the context of application to pre-enactment liens *see Matter of Ward*, 14 B.R. 549, 554 n.2 (S.D.Ga.1981).

5. On November 6, 1978 the President signed and enacted into law the Bankruptcy Reform Act of 1978 (the Code). See Pub.L.No.95–589, 92 Stat. 2549 et seq. (1978). Yet, the Code and its substantive bankruptcy law provisions were not effective until October 1, 1979. Pub.L.No. 95–589, Title IV, § 402(a), 92 Stat. 2682 (1978). Hence, a gap or interim of almost 11 months exists between the enactment date and the effective date of the new bankruptcy laws.

6. For cases holding the avoidance of consensual liens created in the "gap" period to be constitutional *see In re Bradford*, 6 B.R. 741 (D.Nev.1980), aff'g, 5 B.R. 18 (Bkrtcy., D.Nev. 1980); *In re Dawkins*, 13 B.R. 741 (Bkrtcy., S.D.Fla.1981); *In re Osborne*, 11 B.R. 610 (Bkrtcy., D.S.C.1981); *In re Lumpkins*, 11 B.R. 76 (Bkrtcy., D.R.I. 1981); *In re Carroll*, 11 B.R. 45 (Bkrtcy., E.D.N.Y.1981) (dicta approving *Steinart, infra* ); *In re Coleman*, 10 B.R. 772

*In re Martin P. Kubacki*, Case No. 80 01763 (Bkrtcy., N.D.N.Y. June 12, 1981) (Marketos, J.). *Cf., Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981) (avoidance of lien under § 522(f)(2) violative of the "taking" clause of U.S.Constit. amend. V,), *U.S. appeal pending* (April 1, 1981); *In re Carroll*, 11 B.R. 45 (Bkrtcy., E.D.N.Y. 1981). *Contra, Curry v. Associates Financial Services*, 11 B.R. 716 (N.D.Ohio E.D. 1981); *In re Burkholder*, 12 B.R. 585 (Bkrtcy., E.D.Pa.1981).[4] *See generally,* Note, *Constitutionality of Retroactive Lien Avoidance under Bankruptcy Code § 522(f)*, 94 Harv.L.Rev. 1616 (May, 1981).

The question presented under the facts of this case is whether the above constitutional analysis is changed by the fact that HFC's consensual lien was created during the so-called "gap" or "interim" period[5] preceding the effective date of the Code. This issue is not new to the United States bankruptcy or district courts. The numerous courts have divergent holdings on the issue.[6]

(Bkrtcy., D.Md.1981); *In re Bruntz*, 10 B.R. 444 (Bkrtcy., N.D.Iowa 1981); *Matter of Fennel*, 9 B.R. 340 (Bkrtcy., D.Idaho 1981); *Matter of Teske*, 9 B.R. 18 (Bkrtcy., W.D.Mich.1981); *In re Farris*, 8 B.R. 186 (Bkrtcy., E.D.Tenn.1981); *In re Barto*, 8 B.R. 145 (Bkrtcy., E.D.Va.1981); *In re Wells*, 7 B.R. 875 (Bkrtcy., D.Colo.1980); *In re Sweeney*, 7 B.R. 814 (Bkrtcy., E.D.Wisc. 1980); *In re Webber*, 7 B.R. 580 (Bkrtcy., D.Ore.1980); *In re Brown*, 7 B.R. 264 (Bkrtcy., N.D.Tex.1980); *In re Seltzer*, 7 B.R. 80 (Bkrtcy., D.Colo.1980); *In re Beck*, 4 B.R. 661 (Bkrtcy., C.D.Ill.1980); *In re Head*, 4 B.R. 521 (Bkrtcy., E.D.Tenn.1980); *In re Steinart*, 4 B.R. 354 (Bkrtcy., W.D.La.1980).

The following cases found application of § 522(f)(2) during the gap period to be an unconstitutional taking of property without compensation. *See In re Johnson*, 11 B.R. 909 (Bkrtcy., D.Kan.1981); *In re Harper*, 11 B.R. 606 (Bkrtcy., W.D.Wash.1981); *In re Bibb*, 10 B.R. 40 (Bkrtcy., E.D.Mich.1981); *In re Groves*, 9 B.R. 775 (Bkrtcy., E.D.Colo.1981); *In re Woods*, 9 B.R. 325 (Bkrtcy., E.D.Mich.W.D. 1981); *In re Carnes*, 8 B.R. 599 (Bkrtcy., W.D. Okla.1981) (implicit in dicta); *In re Williams*, 8 B.R. 562 (Bkrtcy., E.D.Wash.1981); *In re Seiler*, 8 B.R. 542 (Bkrtcy., W.D.Okla.1981); *In re Shulte*, 8 B.R. 12 (Bkrtcy., D.Kan.1980) (dicta); *In re Jackson*, 4 B.R. 293 (Bkrtcy., D.Colo. 1980); *In re Lucero*, 4 B.R. 659 (Bkrtcy., D.Colo.1980).

There is no dispute by the parties or this Court that the legislation was intended to apply retroactively. The issue becomes one of overall fairness. The circumstances surrounding the creation of vested rights similar to those of the defendant should be analyzed in determining this question. Prior to the passage of the Bankruptcy Reform Act, any creation of contract rights was had with no prior knowledge of the possible attack on those rights. Subsequent to the passage of the Reform Act, but prior to its effective date, the contract rights entered into were created with knowledge of potential infirmity. There is not much question that contract rights entered into before the effective date of the Act are "vested" as are those created before the enactment. Rather, the question is, as I have indicated, whether or not they can be treated differently. I believe that they can.

Concerning the problem of retroactivity, Justice Holmes said in *Danforth v. Groton Water Co.*, 178 Mass. 472, 559 N.E. 1033 (1901) that "[P]erhaps the reasoning of the cases has not always been as sound as the instinct which directed the decisions" and suggested that the criteria which really govern decisions are "the prevailing views of justice." [7]

Some of the cases holding that § 522(f) application is constitutional in the so-called gap period or to contracts created before enactment, do so on the basis that the enactment of § 522(f) was brought about by the desire of Congress to protect debtors against the loss of their property in a patterned instance where the creditor who originally took the lien did so (1) not for the economic purpose of protecting the transaction, but (2) as leverage to be applied against the debtor in the event of bankruptcy, knowing that the property was much more valuable to the debtor than to the creditor.

■ Congress, therefore, reacted to a perceived need to correct a nationwide problem and not just an isolated incident.

With such motive, its action must be weighed against the possible losses that may occur to the credit industry. On balance, principles of equity and fairness fall on the side of the debtor. Retroactive laws dealing with specific or special situations should be narrowly construed; those laws, however, that deal with a nationwide system of private arrangements, should be interpreted liberally. I find that procedural due process is satisfied by reason of the fact that notice was given by Congress of the impending effective date of the legislation. *Cf., Wright v. Union Central Life Insurance Company*, 304 U.S. 502–516, 58 S.Ct. 1025, 1027–33, 82 L.Ed. 1490 (1938) (Supreme Court held that the bankruptcy power of Congress is impliedly written into every contract).

As to the "takings" clause, i.e., the just compensation clause of the 5th Amendment, I question its applicability to the facts of this case. The 5th Amendment to the United States Constitution provides in the last clause thereof ". . . nor shall private property be taken for public use, without just compensation." It is submitted that the above quotation refers to a taking of property for public use. This is an eminent domain provision which in no way relates to the provisions of § 522(f) of the Bankruptcy Code. The "for public use" aspect to the meaning of the just compensation clause of the Constitution has never been clearly delineated by the cases which have addressed the 5th Amendment. Only if the Bankruptcy Reform Act (Code), is, itself, deemed to be in the nature of a *public taking* by reason of its provisions, then conceivably § 522(f) might be construed as (1) being in the nature of eminent domain, and thereby (2) making the just compensation clause applicable. I do not find that the provisions of § 522(f) reach the status of a public taking.

To summarize, although we are dealing here with a so-called vested right of HFC, Congress has the power to effect that right

---

**7.** *See also*, 2 SUTHERLAND, STATUTORY CONSTRUCTION, § 41.05, pg. 261 (4th ed. 1973).

under proper circumstances. Those circumstances are present in the facts of this case because this statute attempts to correct a problem of national concern relating to private contract rights. Furthermore, having had notice of the impending retroactive legislation, those private rights must fall before the statute since due process has been afforded the creditor by the earlier knowledge received via the enactment date.

## III.

The last and most crucial issue to be determined by the Court is *how* expansive is the lien avoidance power of a debtor under § 522(f)(2) of the Code. The Debtor's position is that he may avoid the HFC security interest in its entirety by employing the "spillover" provision [8] of § 522(d)(5) of the Code. The Debtor cites *In re Dubrock*, 5 B.R. 353 (Bkrtcy., W.D.Ky.1980) as his authority. The *Dubrock* case is factually identical to the case at bar. The *Dubrock* court stated that

> Clearly, the avoidance of a lien against a tool of the trade necessitates the application of the tool-of-trade exemption provision, Section 522(d)(6). (footnote omitted) Pursuant to this subsection, Dubrock may avoid Credithrift's lien to the extent of $750.

> But neither the exemption provisions nor Dubrock's lien avoidance capabilities, end there...

> Likewise, the "spillover" effect of paragraph (d)(5) permits the total avoidance of Credithrift's lien. In essence, the interplay between subsections (d) and (f) of Sec. 522 has resulted in Dubrock's being furnished with full equity in his automobile. Credithrift is left with an entirely unsecured claim.

**8.** The operation of § 522(d)(1) and (5) as creating a "wild card" or "spillover" exemption to debtors (which may be applied to exempt property of the estate up to $7,900.00 of the debtor's unencumbered equity value) is a well settled statutory construction of the Code which is accepted by this Court. Section 522(d)(5) is not confined only to property qualifying for exemption under the other provisions of § 522(d). *See Matter of Smith*, 640 F.2d 888

5 B.R. at 356. Yet, HFC cites the case of *In re Sweeney*, 7 B.R. 814 (Bkrtcy., E.D.Wisc. 1980) for the proposition that there is no *interplay* between § 522(d)(5) and § 522(f) which will expand the Debtor's power of lien avoidance beyond the $750.00 tool-of-trade limit in § 522(d)(6). The parties contentions are purely a matter of judicial construction of § 522(f)(2). The question is whether § 522(f)(2) incorporates § 522(d) in its entirety.

The starting point in the interpretation of any statute must be the language of the statute itself. *Matter of Mansion House Center South Redevelopment Company*, 5 B.R. 826, 828 (E.D.Mo.E.D.1980). *See also, Touche Ross v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Matter of Maidman*, 2 B.R. 569, 573 (Bkrtcy., S.D.N.Y.1980). The subject of nonpossessory, nonpurchase-money security interest lien avoidance is separately and clearly set out. Section 522(f)(2) reads as follows:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is—

> \* \* \* \* \* \*

> (2) a nonpossessory, nonpurchase-money security interest in any—

> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(7th Cir. 1981), *rev'g* 5 B.R. 500 (C.D.Ill.1980); *In re LaFlamme*, 14 B.R. 21 (Bkrtcy.App. Panel 1st Cir. 1981), *rev'g*, 10 B.R. 792 (Bkrtcy., D.R.I. 1981); *Matter of Upright*, 1 B.R. 694 (Bkrtcy., N.D.N.Y.1979); *In re Brock*, 10 B.R. 67 (Bkrtcy., W.D.Mich.1981); *In re Taylor*, 8 B.R. 578 (Bkrtcy., E.D.Pa.1981); *In re Laird*, 6 B.R. 273 (Bkrtcy., E.D.Pa.1980); *In re Nichols*, 4 B.R. 711 (Bkrtcy., E.D.Mich.1980).

(B) implements, professional books, or tools, of the trade of the debtor of a dependent of the debtor; or

(C) professionally prescribed health aids of the debtor or a dependent of the debtor.

11 U.S.C. § 522(f)(2). The words "the debtor may avoid the fixing of a lien . . . to the extent that such lien impairs *an exemption* to which the debtor would have been entitled under subsection (b) of this section, . . ." in and of itself is not a mandate of *which exemption* from the federal schedule of § 522(d) or state schedule must be utilized. Here, the Debtor argues the § 522(d)(5) "spillover" exemption (which in proper circumstances might be valued at $7,900.00) (1) is an exemption to which he is entitled and (2) is to be allowed lien avoidance to the full amount of $7,803.00. (The Debtor having previously utilized $97.00 of the "spillover" exemption).

This Court feels that the rationale of the *Dubrock* case should prevail. Congress has adopted a liberal exemption policy. Section 522(d)(5) provides a spillover provision which reads as follows:

> The debtor's aggregate interest, not to exceed in value $400.00 plus any unused amount of the exemption provided under paragraph (1) of this subsection, *in any property*. (Emphasis added).

This subdivision in its reference to subdivision (d)(1) refers to any unused portion of a debtor's real estate exemption. Most courts have interpreted this to mean that if a debtor does not have any real property he may still use the real estate property exemption and apply it to other personal property. The phrase underlined above "in any property" has been determined by most courts to mean just that. This debtor has successfully supported his contention that the vehicle is a tool of the trade. Having established this it is difficult to comprehend why he should then be limited in his application of the exemption provisions just as any other debtor might. It is argued that the extent of lien avoidance under § 522(f)(2) of the Code is limited to those particular categories of exempt property as are identical in description and amount under § 522(d) of the Code. I do not feel, however, that the fact that the drafters used the same language in describing the types of exemptions as was used in describing property subject to the avoidance of the lien is controlling. *See In re Sweeny*, supra at 818. If Congress intended that the debtor's exemption in this circumstance should be limited, I believe it would have clearly expressed such intention. Such limitation is not found either in the legislative history or in the Act. In fact, the spillover provision of § 522(d)(5) is found to be more appropriate.

By reason of the aforesaid, therefore, it is

ORDERED that the certain 1975 Chevrolet ¾-ton pick-up truck be and the same is declared to be a tool of the trade of the Debtor, and it is further

ORDERED that the spillover exemption of Code § 522(d)(5) may be applied to this 1975 Chevrolet ¾-ton pick-up truck, and it is further

ORDERED that pursuant to Code § 522(f)(2)(B) that the security interest of HFC dated August 28, 1978 in and to the aforesaid 1975 Chevrolet ¾-ton pick-up truck is declared void.