**In re Leonard Ray REED, Anna Bell Reed, Debtor.**

**Bankruptcy No. 58000020.**

United States Bankruptcy Court,
W. D. Kentucky.

April 1, 1982.

James A. Harris, Lexington, Ky., for debtors.

Martin W. Johnson, Benton, Ky., for Bank of Benton.

John Reed, Lexington, Ky., for Citizens Bank.

Charles W. Granner, Paducah, Ky., for C.I.T. Financial Services.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Are a table saw, torch, welder, and two trailers "tools of the debtor's trade" as a steel fabricator? The question arises because the debtor has moved to avoid the non-purchase money liens on these items. If they are tools of the trade, they may be exempt and the lien on them avoided; if not, the secured creditor may repossess the items.

The debtor is a steel fabricator principally engaged in the construction of sheet metal buildings. He asserts that each of the items specified above is necessary for the continuation of that trade. The forklift and trailers are used to move the sheet metal to, from and at job sites. The welder, table saw and torch are used to work the metal into proper form.

The debtor and the creditors holding the liens in question agree as to the appropriate standard that applies in tool of trade cases. That standard has been adopted in *In re Meyers*, 2 B.R. 603, 605, 1 CBC 2d 470, 472, 5 BCD 1306, 1307 (Bkrtcy.E.D.Mich.1980):

> In cases of this character there is one question of prime importance, the answer to which inevitably determines the judgment, namely: will the debtor be deprived, by the seizure and sale of the property involved, of a tool or implement necessary for the exercise of his calling, trade or profession? There is, of course, a corollary to this question: Will the loss of the property seized prevent the debtor from continuing to follow the calling, trade or profession in which he has been engaged, and in which the particular property has been used? Quoting *Holt v. Flournoy*, 24 So.2d 171, 173 (La.App. 1945).

In two previous cases we applied that test. In *Credithrift, Inc. v. Dubrock*, 5 B.R. 353, 6 BCD 771, 2 CBC 2d 776 (Bkrtcy.W.D. Ky.1980), a debtor who was a real estate agent maintained that his 1974 Cadillac was

necessary for continuing in his occupation and therefore a tool of his trade. We agreed, noting other cases that have likewise found an automobile, under limited factual circumstances, to be a tool of trade.

In a companion case to *Dubrock*, however, we reached a contrary conclusion. In *First Hardin National Bank v. Damron*, 5 B.R. 357 (Bkrtcy.W.D.Ky.1980), a mechanic and his wife used their cars principally to commute to and from work. Because they lived in a rural area, alternative means of transportation were not readily available. Further, Mr. Damron asserted that he used his car to not only get to his place of employment, but also to carry his tools, travel to job sites, and pick up and deliver auto parts. Nonetheless, we found the automobiles not to be tools of trade.

Concerning Mrs. Damron's car, we reached our conclusion easily. Her ownership and use of a car were wholly unrelated to her job as a factory worker. Mr. Damron's car, though obviously more useful for his trade than Mrs. Damron's was for hers, was likewise not so necessary for his mechanic's job that it could be deemed a tool of trade. The car had not been specifically adapted for use by a roving mechanic. It had not been equipped to make it suited for on-the-road vehicle maintenance. And, because a mechanic normally works in a garage, the lack of a car would not result in his inability to carry on his trade.[1] On this basis, *Damron* differs from *Dubrock*, in which the debtor's job as a realtor demanded mobility in order to compensate for the immutable laws of geography.

The *Damron* and *Dubrock* opinions illustrate that the determination of need, in tool-of-the-trade cases, is essentially a factual one. It is for the tradesman, not the court, to affirmatively establish the necessity of the item claimed to be exempt. The court's sole duty is to formulate and consistently apply clear standards of necessity, within which the tradesman may make his case.

In that connection, we find some fault with the standard of *In re Meyers*, supra, which does nothing more than recite a conclusory definition of necessity. We would prefer a somewhat more refined standard by which necessity can be shown:

Is the item claimed to be exempt reasonably necessary both in kind and in quality for the workman to perform his chosen craft in an efficient and competent manner?

The "in kind" test would disqualify an item if alternative means or devices could perform the same job functions equally well. The "quality" test would reject the new limousine if the old subcompact would do.

The "efficient and competent" test would inject market-place considerations. It would allow any given item to be considered in light of such factors as customary usage in the trade, replacement and maintenance costs, the technological state of the art, comparative productivity and projected profitability.

There may be subtle shadings of degree in applying the "reasonably necessary" standard we have fashioned with this opinion, but like any other tool, it should have utility for the debtor laying legitimate claim to the instruments of his livelihood.

■ No fine distinctions need be drawn, however, in the ordinary case. For example, applying the standard to the facts before us, we have no difficulty in finding the debtor's table saw, torch and welder to be the tools of a steel fabricator.

The same is not true of the fork lift and trailers, which are used to lift and carry things. Lifting and carrying things may be part of the construction trades generally, but those functions are collateral to the principal undertaking of the metal fabricator, which is to mold, shape, fasten and fit

---

1. Contrast the facts in *Damron* with those in *In re Bechen*, 11 B.R. 939 (Bkrtcy.D.S.D.1981), where the court found the pick-up truck of a farrier a tool of his trade. The debtor travelled 20 to 25 thousand miles a year in his truck to service his equine clientelle. The truck carried a supply of horseshoes, and had bolted to it a 400-pound gas forge and a large anvil, making it in effect a traveling farrier shop.

metals to their intended form and use. Lifting and carrying things could be done by others, under contract, or by alternative mechanical or vehicular means. To further make the point, there is no showing that the debtor's trailers do what his trucks cannot.

Because we have found some items to be tools of the debtor's trade, we must determine the extent to which the liens may be avoided. The rule is clear. Sec. 522(f) allows lien avoidance "only to the extent that such lien impairs an exemption." Under § 522(d)(6)[2] the debtor may exempt tools of trade up to $750 in value. Reading § 522(f) and § 522(d)(6) together, the lien can be avoided only to the extent of $750. If the property exceeds $750 in value, the lien still encumbers that excess.[3]

■ We address finally the question of the constitutionality of the application of § 522(f) to liens created before the date on which the Bankruptcy Code was enacted. The issue arises from due process concerns. We resolved that issue in *In re Cunningham*, 17 B.R. 463 (Bkrtcy.W.D.Ky.), concluding that pre-enactment liens—liens created before November 6, 1978—could not be avoided, but post-enactment liens could be. The rationale expressed in *Cunningham* is that upon the Code's enactment, creditors were put on notice of the effect bankruptcy could have on liens. Creditors taking liens thereafter did so with at least constructive knowledge that the liens might be avoided in the future.[4]

It appears from the record that all liens were created after the Code's enactment date, and may therefore be avoided without constitutional impediment.

Upon the foregoing reasoning and authorities, IT IS HEREBY ORDERED that,

The motions to avoid the non-purchase money, non-possessory liens on the welder, table saw and torch are sustained; and such liens may be avoided to the extent of the exemptions allowable under § 522(d)(6), (d)(5) and (d)(1).

IT IS FURTHER ORDERED that:

The motions to avoid liens on the forklift, two-axle trailer and three-axle trailer are overruled.

**2.** This case was filed before April 9, 1980, the date on which Kentucky opted out of the federal exemption schedules.

**3.** The debtor may, however, avail himself of the general exemption provided in § 522(d)(5) and (d)(1), if he has not already done so, and avoid the liens to the extent allowed in those provisions. *Credithrift, Inc. v. Dubrock*, supra; *Eag-*

en *v. Household Finance Corp.*, 16 B.R. 439 (Bkrtcy.N.D.N.Y.1982).

**4.** The line of reasoning and conclusions reached in *Cunningham* are in accord with most cases deciding the issue. One such case, *Rodrock v. Security Indus. Bank*, 642 F.2d 1193 (10th Cir. 1981) is presently before the Supreme Court.