**In re Gerard Lionel LAFLAMME, Lenora Lee Laflamme, Debtors-Appellants.**

**Bankruptcy No. 81–9022.**

United States Bankruptcy Appellate Panel, First Circuit.

Aug. 28, 1981.

Carl I. Freedman, Rhode Island Legal Services, Inc. Providence, R. I., for appellants.

William C. Hillman, Providence, R. I., for appellee.

Before GLENNON, C. J., and LAVIEN and GABRIEL, JJ.

## DECISION AND ORDER ON APPEAL

LAVIEN, Bankruptcy Judge.

This appeal presents a single issue of law: whether a cause of action arising under the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*, comes within "any property" which may be claimed as exempt by a debtor within the meaning of 11 U.S.C. § 522(d)(5). This matter comes before this Panel following the Decision of the Bankruptcy Court sustaining Appellee's objection to Appellants' claim of exemption which they had set forth in their joint Chapter 7 bankruptcy petition. This issue is one of first impression in this Circuit.

There are no facts in dispute. On June 25, 1980, the Debtors filed a joint Chapter 7 bankruptcy petition. In their Schedule B–4, they listed as an exemption under 11 U.S.C. § 522(d)(5) a "Consumer Credit Protection Act claim against Finance America Corp." in the amount of $2,000. The Appellee, Finance America Corporation, objected to this claim of exemption, contending that the phrase "in any property" within § 522(d)(5) should be restricted to the specific types of property enumerated in § 522(d).

The property eligible for exemption pursuant to the federal exemption in § 522(d) falls within eleven categories. The dispute in this case focuses on the nature of the property contained in the fifth category:

> The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, *in any*

*property.* 11 U.S.C. § 522(d)(5) [Emphasis added.] [1]

The Appellants, the Debtors, argue that to limit the meaning of the words "any property" contained in § 522(d)(5) to include only categories of property specified elsewhere in that section is to misconstrue both the plain meaning and the legislative history relating to this question.

The Bankruptcy Court rejected the Appellants' argument that the words "any property" should be interpreted without limitation and held that "the words 'in any property' as used in § 522(d)(5) are intended to cover only that type of property actually mentioned in subsection (d)".[2]

We do not agree. The Bankruptcy Court's interpretation is contrary to the plain meaning of the language of § 522(d)(5), the clear intent of Congress as manifested by the legislative history of the Bankruptcy Reform Act of 1978 (Bankruptcy Code), and the internal structure of the Bankruptcy Code. Moreover, we note that this question, though being addressed for the first time in this Circuit, is no longer a novel bankruptcy question.[3] Only one Court[4] has concurred with Appellee's position and that decision was subsequently reversed on appeal.[5]

### I.

In matters of statutory construction the duty of this Court is to give effect to the intent of Congress and in doing so our first reference is of course to the literal meaning of the words employed. *United States v. New England Coal and Coke Company,* 318 F.2d 138, 142 (1st Cir. 1963), quoting *Flora v. United States,* 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958).

The Bankruptcy Court emphasizes the "fluid characteristic" of the word "property"[6] and points to the standard rule of statutory construction that the meaning of ambiguous words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it. *Wong Kam Wo v. Dulles,* 236 F.2d 622, 626 (9th Cir. 1956).

The problem with this approach is its premise that the words "any property" in § 522(d) are ambiguous or at least capable of many meanings. While the word "property" may have amorphous boundaries in general legal discourse, we are dealing here in the more narrow context of a bankruptcy proceeding under the Bankruptcy Code. The word "property" is an operative term. Section 541(a)–(e) specifies what property becomes property of the bankruptcy estate.[7] The fact that this definition is broad does not make it ambiguous. Further, the drafters of the Bankruptcy Reform Act of 1978 prided themselves in their exact use of language and, throughout the 1978 Act, very complex provisions are written with a precise use of language. Therefore, it is unlikely the drafters would choose the words "any property" if their intention were to limit the application of the subsection (d)(1) surplus to a finite list of categories of property set out in § 522(d):

1. Paragraph (1) referred to in 11 U.S.C. § 522(d)(5) permits a debtor to exempt:

 "... The debtor's aggregate interest, not to exceed $7,500 in value, in real property that the debtor or dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor."

2. *In re LaFlamme,* 10 B.R. 792, 795, 7 BCD 650, 652 (Bkrtcy.D.R.I.1981).

3. The following cases have dealt with the application of § 522(d)(5) to exempt property not within the § 522(d) categories: *Matter of Upright,* 1 B.R. 694, 5 BCD 1124 (Bkrtcy.N.D.N.Y. 1979), *Matter of Nichols,* 4 B.R. 711, 6 BCD 597 (Bkrtcy.E.D.Mich., S.D., 1980), *In re Laird,* 6 B.R. 273, 6 BCD 998 (Bkrtcy.E.D.Pa.1980), *In re Brock,* 10 B.R. 67 (Bkrtcy.W.D.Mich.1981), *In re Taylor,* 8 B.R. 578, 6 BCD 1325 (Bkrtcy.E.D. Pa.1981).

4. *Matter of Smith,* 5 B.R. 500, 6 BCD 667 (D.C. C.D.Ill.1980).

5. *Matter of Smith,* 640 F.2d 888 (7th Cir. 1981).

6. *In re LaFlamme* at 793, 7 BCD 651.

7. The Bankruptcy Court made no mention of § 541 in its discussion of the definitions of property.

"... [I]t is not the responsibility or function of this court to perform linguistic gymnastics in order to upset the plain language of Congress as it exists today." *Alabama v. Marshall*, 626 F.2d 366 at 369 [(5th Cir.)]

... [P]lain statutory language should control and ... resort to legislative history is appropriate only when the statute itself is ambiguous. Congress has a special duty to choose its words carefully when it is drafting technical and complex laws; we facilitate our work as well as that of Congress when we adhere closely to the statutory text..." Justice Stevens concurring in *St. Martin Evangelical Church, et al. v. State of S. Dakota*, —— U.S. ——, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981).

## II.

However, should there be any question as to any ambiguity in the statute, particularly the phrase "any property", the legislative history provides compelling evidence that the words "any property" were purposely selected by the drafters to express an intent to depart from the historically conservative state exemptions which focused on necessities of daily living and displayed a strong agrarian bent.[8] Available to the drafters as models were two exemption schemes, that contained in the work of the Commission on the Bankruptcy Laws of the United States (Commission Report) and that set out in the Uniform Exemptions Act. The Commission was created by Congress in 1970 to examine the Bankruptcy laws and recommend changes. In 1973, it issued its report which contained comprehensive recommendations and the text of a proposed Bankruptcy Act of 1973 designed to effectuate the Commission's recommendations. The Commission recommended to Congress that debtors be allowed to use any surplus from their residence exemption to exempt only certain items of property specifically listed elsewhere in the exemption provision. *Report of the Commission on the Bankruptcy Laws of the United States*, H.R.Doc.No. 93–137, 93d Cong., 1st Sess., pt. 1, pp. 171–172 (1973). The draft Bankruptcy Act of 1973 in § 4–503(b) codified this recommendation with language that lacks nothing in clarity:

"(b) Homestead or Property in Lieu Thereof

(1) An individual debtor shall be allowed an exemption of property which he owned and was used at the date of the petition as a home for the debtor, his spouse, or a dependent of any or all of them. The aggregate value so allowable shall not exceed $5,000 plus $500 for each dependent of the debtor.

(2) If no property is allowed as exempt under paragraph (1) or if the property allowed has an aggregate value less than the maximum allowed under paragraph (1), *an individual debtor shall be allowed additional exemptions or property of the kinds described in clauses (1) and (2) of subdivision (c)* until the aggregate value of such additional property and property allowed as exempt under paragraph (c) of this subdivision equals the maximum value allowable under paragraph (1)." H.R.Doc.No. 93–137, 93 Cong., 1st Sess., pt. 2, p. 125 (1973) [Emphasis added.]

The second exemption scheme available to the drafters, the Uniform Exemption Act, provided an equally precise formulation:[9]

Section 8. [Exemptions of Personal Property Subject to Value Limitations] ... (d) In addition to any exemption provided by this Act or other law, an individual is entitled to exemption of cash and other liquid assets to the extent of a value not exceeding (1) $500 if the individual claims a homestead exemption (Section 4), or (2) $1500 if the individual does not claim a homestead exemption. The term "liquid assets" includes deposits, securities, notes, drafts, unpaid earn-

---

8. Note, even the eleven categories of § 522 now contain, in addition to the traditional "necessities" exemptions, various intangibles.

9. Other exemptions are set out in sections 5, 6, 7 and 8(a)–(c) but do not directly relate to the issue of an unrestricted exemption.

ings not otherwise exempt, accrued vacation pay, refunds, prepayments, and other receivables.

In Paragraph 8(d) the property from which the additional exemptions may be claimed is clearly specified.

 Thus, the drafters of the 1978 Bankruptcy Reform Act had before them [10], from two sources, language which explicitly limited the application of the unused amount of the homestead exemption. Moreover, the drafters were aware of serious proposals to replace the traditional value limitations on designated personal property with a simple value limitation without restrictions as to kinds of property to which it be applied.[11] Given the existence of well-drafted models of language and the drafters' awareness of the debate over restricted versus general exemptions, the rejection of the clear language formulations in the Commission Report and the Uniform Exemption Act and the choice of the words "in any property" can only reflect a Congressional intent to provide an unrestricted exemption. Changes in a statute in the course of its enactment must be observed with caution in determining legislative intent, but rejection of specific provisions are significant and may be properly considered by the court. *People for Environmental Progress v. Leisz*, 373 F.Supp. 589, 592 (C.D. Cal.1974).

On the question of Congressional intent, the lower court found persuasive an argument made by the district court in re *Smith* :

... [W]ith all the care and effort which went into describing and delimiting the

10. The legislative history (H.R.No. 95–595, 95th Cong., 1st. Sess. [1977], p. 361, U.S.Code Cong. & Admin.News 1978, p. 5787, 6317) states that the Federal exemptions "are derived in large part from the Uniform Exemptions Act, promulgated by the Commissioner of Uniform State Laws in August, 1976." With the exception of the "any property" clause of § 522(d)(5), each subsection of § 522(d) has a corresponding subsection within the Uniform Exemptions Act (6), (7) or (8) that is identical or closely parallel in language.

11. See Comment (2) to Section 8 of the Uniform Exemption Act:

types of property which could be permitted as exempt to provide debtors a "fresh start" after bankruptcy, Congress obviously did not intend any large, additional "wild card" or "unfilled bin" theory of exemption here to be made up of any other kind of property which might exist. *Matter of Smith*, 5 B.R. 500, 501 (D.C.Ill. 1980).

However, we concur with the Seventh Circuit that the legislative history supports the conclusion that Congress did, in fact, intend such a general exemption in order to better insure the debtor's fresh start by preserving the potential for the use of any excess homestead exemption.

Congress found that "there is a federal interest in seeing that a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start." [House Report No. 95–595, 95th Cong., 1st Sess. (1977), p. 126.] The general exemption was intended to ensure that there was no discrimination between homeowners and non-homeowners in achieving that goal. [House Report, p. 361.] By permitting non-homeowners (or homeowners with property valued under $7,500) to exempt the unused portion of the homestead exemption, plus $400, Congress in effect gave all debtors potentially the same $7,900 stake. *Matter of Smith*, 640 F.2d 888, 891 (7th Cir. 1981).

Given Congress' clearly articulated intent to balance the opportunity for a "fresh start" available to homeowners and non-homeowners, we further concur with the Seventh Circuit that

Law review commentators frequently recommend that an exemption statute prescribe a value limitation for personal property without restriction as to the forms or kinds held by the debtor. See, e. g., Joslin, Debtors' Exemption Laws: Time for Modernization, 34 Ind.L.J. 355, 362–75 (1959); Vukowich, *supra* at 829; Note, 53 Corn.L.Rev. 663, 671–83 (1968); Note 69 Yale L.J. 1459, 1507–14 (1959). This approach is rejected by this Act, as it was in the Commission's Proposed Bankruptcy Act.

... [I]t makes no sense to limit the type of property that may be applied to the general exemption without a clear statement of congressional intent to do so. *Id.* at p. 891.

## III.

The Bankruptcy Court also focused on the internal structure of § 522(d) and found that structure to militate against the general exemption interpretation:

> If Congress intended a 'wild card' exemption, paragraph (d)(1) would be unnecessary, and the result urged here by the Debtors could have been achieved by combining (d)(1) and (d)(5), and allowing an exemption of $7,900 in any property, enumerated or unenumerated. To render (d)(1) superfluous via the liberal construction route 'would violate the cardinal rule that if possible, effect shall be given to every clause and part of a statute'. (Citation omitted.)

Before considering that argument on its merits, an examination of the structure of § 522(d) is in order to see if that sheds any light on how the phrase "any property" was intended to be applied. The canons of statutory interpretation deal with a general term followed by specifics or conversely specifics followed by a general term. Here, the phrase "any property" appears in d(5), i. e., not at the beginning or end of the eleven specific exemptions but almost in the middle, so that it would not by its location appear to be intended to have any particular limitation on or by the items that either precede or follow it. Though possibly an argument might be made that following as it does the specifically spelled out basic personal exemptions in (d)(1)–(d)(4) of the furnishings, wearing apparel, appliances, books, animals, crops, and personal jewelry, the general all-inclusive exemption of "any property" in (d)(5) indicates a natural order of first being sure that the Debtors have for their fresh start the satisfaction of their basic human needs and then anything else.

As for the argument that a broad interpretation of (d)(5) renders (d)(1) superfluous,[12] a result ordinarily to be avoided, we note that "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent." *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). That (d)(1) is not superfluous is clear from the statements in the legislative history which show that Congress wanted to protect an important aspect of a homeowner's fresh start, his home, and at the same time ensure that there was no discrimination between homeowners and non-homeowners in achieving a fresh start.[13]

The Bankruptcy Court's focus on the internal structure of § 522(d) is of limited value for a more fundamental reason. Section 522(d) does not exist in a vacuum. It is part of a comprehensive statute whose twofold purpose is to provide an equitable distribution to creditors and to give the debtor a fresh start. Proper interpretation of a single section of a statute requires stepping back from the section in dispute and taking a more panoramic view:

> When "interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry

---

12. One explanation is that Congress was establishing priorities for application of exemptions, i. e., Congress intended by its reference to (d)(1) within (d)(5) that the $7,500 exemption be first applied to the Debtor's equity, if any, in his home and that only to the extent that his equity was less than the $7,500 provided for in (d)(1) was the surplus to go over into the (d)(5) general exemption. This issue is not before us and we reserve a determination until it is and simply note that the first four exemptions are the classic, personal property exemptions followed by a general unlimited exemption to give non-homeowners or those with limited equity an equalizer in whatever else might be available to contribute to the fresh start.

13. House Report No. 95–595, 95th Cong. 1st Sess. (1977) p. 361.

into execution the will of the Legislature...." *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974), quoting *Brown v. Duchesne*, 19 How. 183, 194, 15 L.Ed. 595 (1857).

The internal structure of the Bankruptcy Code further supports the broad interpretation of "any property". The commencement of a bankruptcy creates an estate which consists of property including, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of § 541 property is broad, House Report, *supra*, at p. 367; 124 Cong.Rec. H 11090 (daily ed. Sept. 28, 1978), and specifically includes causes of action. *Id.* at 11,-096. In fact, the definition of property in § 541 represents an expansion of the concept beyond that which was included in the Bankruptcy Act of 1898 in that all property, including exempt property, is contained in the estate pursuant to § 541.[14] It is this definition of property ("all legal and equitable interests of the debtor") which Appellants contend should be used in interpreting "any property" which is used in § 522(d)(5).

The lower court's holding, however, rejects the § 541 definition of property in construing § 522(d)(5) and seems to distinguish between "property" as it appears in § 522(d)(5) and § 541 despite the lack of any indication that Congress ever intended such a result.[15] The bankruptcy and district courts in *Matter of Smith, supra*, also distinguished between § 522 property and § 541 property. In reversing, the Seventh Circuit held:

> By including even exempt property within the estate under the Code, Congress

eliminated this conceptual distinction between exempt and non-exempt property. We should not recreate that distinction, as the district court does, by holding that section 522 property is different from section 541 property. *Matter of Smith, supra*, at p. 892.

We agree with the Seventh Circuit and other courts [16] which have considered this question, that "property" in § 522(d)(5) should be construed in the same manner as it is defined elsewhere in the statute with the result that the general exemption in § 522(d)(5) may be applied to any property which is property of the estate.

> [It is a] familiar principle of statutory construction [that the] consistent usage of the term throughout the statute is persuasive evidence that Congress intended it to carry the same meaning in the sections under scrutiny. *Harman v. New Hampshire Savings Bank*, 638 F.2d 280, 282 (1st Cir. 1981).

We, therefore, hold that to the extent the Appellant-Debtors have any unused exemption under 11 U.S.C. § 522(d)(5) it may be claimed against the value of the cause of action under the Consumer Credit Protection Act.

The decision of the Bankruptcy Court is reversed.

---

**14.** Under the 1898 Act, the estate consisted only of non-exempt property. See former 11 U.S.C. § 110(a).

**15.** In fact, the legislative history indicates that the broad definition in § 541 should be used consistently throughout the Act:

"[P]roperty" ... is used consistently throughout the code in its broadest sense, including cash, all interests in property, such as liens, and every kind of consideration including promises to act or forbear to act as in section 548(d). 124 Cong.Rec. H 11090 (daily ed. Sept. 28, 1978).

**16.** See footnote 3 *supra*.