**In re Ellen Marie DIPALMA, Arthur Dipalma, Debtors.**

**Bankruptcy No. 81–1840–L.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 2, 1982.

Richard S. Weiss, Boston, Mass., for debtors.

Matthew D. Rockman, Boston, Mass., for trustee, Joseph Braunstein.

## MEMORANDUM AND ORDER RE TRUSTEE'S OBJECTIONS TO DEBTORS' CLAIMED EXEMPTIONS

THOMAS W. LAWLESS, Bankruptcy Judge.

Before the Court are the Trustee's objections to the Debtors' claimed exemptions in

a motor home and motor boat. The facts are not in dispute, only the conclusions of law to be drawn therefrom.

## FACTS

On October 13, 1981, Ellen and Arthur Dipalma ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtors' bankruptcy schedules list $24,249.18 in liabilities and $12,960.00 in assets. The Debtors' two principal assets consist of a forty-two foot Rollahome Trailer and a twenty-four foot Silverton motor boat (hereinafter respectively "motor home" and "boat"). The motor home is scheduled as personal property with a fair market value of $4,750.00 subject to a nonpossessory, nonpurchase-money security interest granted by the Debtors to St. Michael's Credit Union in the amount of $7,668.00. The mobile home is currently located at Lee's Trailer Park, in Revere, Massachusetts, and serves as the Debtors' current residence and domicile. The Debtors' claim an exemption in the motor home in the amount of $4,750.00 pursuant to "11 U.S.C. § 522(d)".[1]

The fair market value of the boat is scheduled as $5,500.00 and listed subject to a nonpossessory, nonpurchase-money security interest granted by the Debtors to Omer R. Desjaslais in the sum of $3,240.00. As with the mobile home, the Debtors claim an exemption in the boat pursuant to "11 U.S.C. § 522(d)" in the amount of $5,500.00.

After appropriate examination and investigation, the Chapter 7 trustee ("Trustee") discovered that the security interests in the mobile home and boat were both unperfected at the time of filing of the bankruptcy petition. Asserting his powers under 11 U.S.C. § 547,[2] the Trustee has avoided both unperfected security interests. The Trustee and Debtors now dispute who is entitled

to the benefits of these avoided security interests.

## DISCUSSION

Property recovered by a trustee under § 544 or § 547 is automatically preserved for the benefit of the estate. 11 U.S.C. § 551. Nevertheless, the Debtors argue that the property so recovered inures to their benefit by virtue of their claim of exemptions.

The rights and ability of a debtor to either avoid liens on property claimed as exempt or to claim the benefits of liens avoided by the trustee on exempt property are governed exclusively by 11 U.S.C. § 522. Once the lien has been avoided by the trustee, the debtor must come within one of subsections 522(g) through (i) in order to avoid the operation of § 551.

Subsection (g) of section 522 permits the debtor to exempt property which the trustee recovers under specified sections of the Code, none of which are applicable in the instant case.

Subsection (h) of section 522 empowers the debtor, upon specified conditions, to avoid certain transfers if the "debtor could have exempted such property under subsection (g)(1)" of § 522 and the trustee does not attempt to do so. Notwithstanding that the Trustee has already avoided these security interests, the Debtors cannot utilize subsection (h) because § 522(g)(1) does not allow the exemption of property recovered by the trustee if the transfer was a voluntary transfer by the debtor. The voluntary grant of a security interest, as opposed to a lien created by operation of law or the fixing of a judicial lien, is clearly a voluntary transfer. 11 U.S.C. § 101(40), (38), (36); Senate Report No. 95–989, 95th Cong. 2d Sess. (1978) 27; House Report No.

---

**1.** Schedule B–4 Property Claimed as Exempt, on Debtors' schedules.

**2.** The Trustee characterized the avoidance of these unperfected security interests as preferences under § 547 apparently on the theory that a transfer not perfected at the time of the commencement of a case is deemed to have

been made immediately before the date of the filing of the petition on account of an antecedent debt. 11 U.S.C. § 547(e). More properly in the instant case, the Trustee's avoiding powers arose from § 544. However, the Debtors' ability to claim as exempt property the Trustee recovers under § 544 or § 547 is identical.

95–595, 95th Cong. 1st Sess. 314 (1977), *reprinted in* (1978) U.S.Code Cong. & Admin. News 5787, 5813. *See, e.g., Matter of Lamping,* 8 B.R. 709, 711 (Bkrtcy.E.D.Wis. 1981).

Subsection (i)(2) provides that, notwithstanding section 551, property recovered by the trustee under, *inter alia,* sections 544 or 547 may be preserved for the benefit of the debtor to the extent that the debtor could exempt the property under subsection (g) of 522 or paragraph (1) of 522(i). Subsection (i)(1) of § 522 is inapplicable on its face to the facts at hand and thus the Debtors' last hope depends on their ability to fall within the purview of § 522(g).[3] Subsection (g)(1), *supra,* is inapplicable because the transfer was voluntary. Section 522(g)(2) refers back to section 522(f)(2) which provides:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> . . . .
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

This somewhat convoluted exemption scheme enables a debtor to claim the benefits of the trustee's avoidance of an unperfected nonpurchase-money security interest if the collateral falls within one of the categories listed under (f)(2).

■ A boat clearly is not a household good or furnishing within the meaning and intent of § 522(f)(2)(A). Unless the boat is necessary to and used by the debtor to carry on his or her trade, neither does a boat qualify as a tool of the debtor's trade. H.R.Rep. No. 95–595; 95th Cong., 1st Sess. 362 (1977) *reprinted in* (1978) U.S.Code Cong. & Adminis.News 5787, 6087; *see also Matter of Meyers,* 2 B.R. 603 (Bkrtcy.E.D. Mich.1980) (whether motor vehicle qualifies as tool of trade). The Debtors in the instant case have not made such a showing.

■ Accordingly, the property recovered by the trustee by virtue of his avoidance of the unperfected security interest in the boat is preserved for the benefit of the estate. 11 U.S.C. § 551.

The fair market value of the boat ($5,500.00) exceeds the value of the avoided security interest ($3,240.00). The value of the boat in excess of the security interest may be exempted by the debtor under section 522(d)(5) which provides:

> (d) the following property may be exempted under subsection (b)(1) of this section:
>
> . . . .
>
> (5) The debtor's aggregate interest not to exceed in value $400.00 plus any unused amount of the exemption provided under paragraph (1)[4] of this sub-

---

3. Section § 522(g) provides that:
   Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551 or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
   (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or
(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

4. Paragraph (1) referred to in 11 U.S.C. § 522(d)(5) permits a debtor to exempt:
   ". . . The debtor's aggregate interest, not to exceed $7,500.00 in value, in real property or personal property that the debtor or a depend-

section *in any property....* (emphasis added).

The operation and effect of section 522(d)(5) has been described as a "spillover" or "wild card" exemption. This Circuit has held that the term "any property" should be liberally construed to permit the total $7,900.00 possible exemption under subsection (d)(5) ($15,800.00 in the case of a husband and wife) to apply against any property which can be considered property of the estate under 11 U.S.C. § 541. *In re LaFlamme,* 14 B.R. 21 (Bkrtcy.App. 1st Cir. 1981); *see also In re Smith,* 640 F.2d 888 (7th Cir.1981). Since the Debtors have not claimed an exemption under subsection (d)(1), they may "spillover" this provision and exempt the value of the boat in excess of the avoided security interest. 11 U.S.C. § 522(d)(5).

■ As discussed above, the Debtors' right to claim the benefits of the avoided lien under these circumstances is dependent upon whether a mobile home can be classified under either § 522(f)(2)(A), (B), or (C). A mobile home that is used by a debtor as a residence is eligible for exemption under § 522(d)(1) which provides for an exemption in "[t]he debtor's aggregate interest, not to exceed $7,500.00 in value, in real property or *personal property* that the debtor or a dependent uses as a residence...." (emphasis added). *See, e.g., Augustine v. United States,* 675 F.2d 582 (6 C.B.C 2nd. 1053) (3rd Cir.1982); *Matter of Moore,* 5 B.R. 669 (Bkrtcy.S.D.Ohio 1980). The Debtors, however, do not seek to exempt this item under subsection (d)(1) because they will be unable to utilize the lien avoidance powers of subsection (f)(2) by such a classification. They argue instead that a mobile home is the ultimate manifestation of a household good and furnishing and as such the lien may be avoided under subsection (f)(2)(A).

■ Before addressing whether a mobile home does in fact constitute household goods or furnishings, the effect of Congress' specific inclusion of an item under one subsection of § 522(d) upon a debtor's claimed exemption under another more generalized, subsection of 522(d) must be considered. It is clear that a debtor is not able to categorize an item of property for one purpose under one section of 522(d) and for lien avoidance purposes under another. *E.g., Matter of Moore,* 5 B.R. 669 (Bkrtcy.S.D. Ohio 1980) (the bankruptcy court held that the debtor could not characterize a mobile home as homestead property for purpose of claiming Ohio's homestead exemption and then seek to classify the mobile home as household goods or furnishings for lien avoidance purposes under (f)(2))[5]; *In re Eagan,* 16 B.R. 439 (Bkrtcy.M.D.N.Y.1982) (a debtor's exemption classification of a pickup truck as a tool of trade mutually excludes the item's status under § 522(d)(2) as a motor vehicle). Courts which have considered the problem, however, are divided on the issue of whether the specific inclusion of an item of property under one subsection of § 522(d) precludes that item's classification under a different subsection of § 522(d), and thus eligible for the lien avoidance provision of § 522(f)(2).[6]

ent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor."

5. The bankruptcy court also went on to compare the debtor's mobile home and automobile with the provisions of § 522(d)(3), (4), (6) and (9) and found that mobile home and automobile are not of the same kind or even similar to the items listed in the above sections, unless the debtor's automobile qualified as a tool of the trade. To the extent the bankruptcy court held that a mobile home can never be considered household goods and furnishings, this Court is neither bound by nor does it follow this decision.

6. For cases holding that the enumeration of an exemption for an automobile under § 522(d)(2) does not prevent an automobile's classification under (d)(6) as a tool of trade [and thus eligible for the lien avoidance provisions of § 522(f)(2)(B)] see, e.g., *Augustine v. United States,* 675 F.2d 582 (3rd Cir.1982); *In re Dubrock,* 5 B.R. 353 (Bkrtcy.W.D.Ky.1980); *In re Eagan,* 16 B.R. 439 (Bkrtcy.N.D.N.Y.1982); *Matter of Moore, supra,* at 670. For the contrary view, *see, e.g., Matter of Lamping,* 8 B.R. 709 (Bkrtcy.E.D.Wis.1981); *In re Sweeney,* 7

■ Despite the specific enumeration of an item of property under one provision of § 522(d), I hold that a liberal, non-restrictive construction of exemption statutes [7] does not necessarily preclude the exemption of that item under a different provision of § 522(d), if applicable. Whether the liberal construction applies to the lien avoidance provisions of § 522(f) requires consideration of the purposes behind the enactment of exemptions statutes.

■ In order to facilitate a debtor's fresh start, exemption statutes were enacted to protect a debtor and his dependents against pauperism and to provide them means of reasonable comfort so that a debtor could follow his vocation and provide support for himself and his family. *See, e.g., Matter of Irving,* 220 F. 969 (9th Cir.1915); *In re Hindman,* 104 F. 331 (9th Cir.1900). Congress' protection of a debtor's necessities requires a shifting of the burden of social welfare from the community, who otherwise would be responsible for support of an indigent debtor and his dependents, to creditors. *In re Perry,* 225 F.Supp. 481 (N.D. Ohio 1963); *In re Hodges,* 4 B.R. 513 (Bkrtcy.S.D.Ohio 1980). The ultimate manifestation of these two policies—ensuring that a debtor has sufficient assets to embark upon the road of rehabilitation and the shifting of the costs of this trip from society to creditors—is embodied in subsection (f) of § 522 which provides, *inter alia,* for the avoidance of nonpossessory, nonpurchase-money security interest in certain categories of goods. A narrow reading of § 522(f)(2) would be inconsistent with the furtherance of these broad goals. Accordingly, I hold that the categories of items enumerated in § 522(f)(2)(A), (B) and (C) should be as liberally construed as the exemptions contained in § 522(d). Such a construction is in furtherance of Congress' finding that "there is a federal interest in seeing that a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start." House Report No. 95–(79)–959, 95th Cong., 1st Sess. 126 (1977).

The Debtors' contention that a mobile home is household goods and/or furnishings is not as farfetched as it might seem on first impression. A mobile home is an aggregation of items, such as beds, tables, refrigerator, stove, and lamps, which ordinarily would be subject to the lien avoidance provision of § 522(f)(2)(A) by a debtor whose home is real property. In a motor home, however, these items are affixed to the body of the trailer. The non-severability of each of these items from the trailer itself without the concomitant destruction of the usefulness and value of both the item and the trailer prevents the mobile home dweller's exemption of these items under § 522(f)(2). Additionally in the instant case, it is undisputed that the body of the trailer constitutes personal property. There is no evidence, nor do I find, that the trailer is attached to, or is a part of, any real property or that the debtor has any proprie ty interest in the land beneath the trailer.

Section 522(f)(2)(A) allows a debtor to exempt nonpossessory nonpurchase-money security interests in household goods and furnishings "that are held primarily for the personal, family, or household use of the debtor or dependent of the debtor...." In the instant case, the Debtors' use of the mobile home as their residence establishes the household purpose for which this item is held. While it might be inequitable to permit mobile home dwellers to avoid nonpossessory nonpurchase-money security interests on their dwelling when such right is not afforded to debtors whose residence is considered real property, it would be equally inequitable to deny mobile home dwellers the right to exempt items essential to their fresh start because of the peculiar characteristics of motor homes. Choosing between these inequities requires a deferral to the fresh start philosophy inherent in the bankruptcy laws of this country.

■ Accordingly, I hold that a mobile home, as personal property and when used

B.R. 814 (Bkrtcy.E.D.Wis.1980); *In re Abt,* 2 B.R. 323 (Bkrtcy.E.D.Pa.1980).

**7.** *E.g., In re LaFlamme, supra,* at 23–24; *In re Coleman,* 5 B.R. 76, 79 (Bkrtcy.N.D.Tenn.1980).

as a debtor's residence, may be considered household good and furnishing for the purpose of avoiding a lien under subsection (f)(2)(A), 11 U.S.C. § 522(f)(2)(A).[8]

█ The next, and perhaps most important, issue is the extent to which the Debtors can avoid this lien under § 522(f)(2). Without articulating their reasoning, the Debtors argue that the entire lien can be avoided and the property exempted. For the reasons set forth below, I agree.

The Debtors' classification of their mobile home as household goods and furnishings entitles them to an initial avoidance of the lien in the amount of $400.00, as each Debtor is entitled to utilize their $200.00 exemption in this item. *Augustine v. United States, supra,* at 585. The Debtors' ability to void the lien to any further extent is dependent upon whether they may aggregate the "spillover" exemption authorized by (d)(5) with the exemptions under (d)(3) for purposes of lien avoidance under § 522(f)(2)(A).

█ Subsection (d)(5), 11 U.S.C. § 522(d)(5), entitles each debtor to an exemption worth $7,900.00 in "any property." As noted above, this Circuit has held that the term "any property" applies to any property which is considered part of the estate under § 541. *In re LaFlamme, supra,* at 26. Despite the lack of any equity in the property, the Debtors' legal and equitable interest in this item is sufficient not only to make the motor home part of their estate under § 541, but is also sufficient for their avoidance of this lien and their claim of exemption in this property. *See Matter of Lamping,* 8 B.R. 709, 711 (Bkrtcy.E.D. Wis.1981). Since the Debtors have claimed a $2,260.00 exemption in their boat and $110.00 in cash, they have a total of $12,-430.00 left to apply to "any property" by virtue of (d)(5).

Subsection 522(f), 11 U.S.C. § 522(f), provides that a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section. . . ." Subsection (b), referred to in 11 U.S.C. § 522(f), provides, in relevant part, that:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section, unless the State that law is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative, . . .

It cannot be disputed that were it not for the lien of St. Michael's Credit Union upon the Debtors' mobile home, the Debtors would have been entitled to exempt this property under subsection (d) of § 522. Accordingly, the Debtors may, by virtue of subsection (d)(5), "spillover" the unused exemption of subsection (d)(1) into subsection (f) and avoid the entire lien upon the mobile home. *E.g., Augustine v. United States, supra,* at 586; *In re Dubrock, supra,* at 356; *In re Eagan, supra,* at 445. *Contra,* e.g., *In re Sweeney, supra,* at 819.

█ It has been argued that since the property described in § 522(d)(3), (4), (6) and (9) is identical to the property described in subsections (2)(A), (B), and (C) of § 522(f), the dollar limitations contained in the former should be read into the latter. *In re Sweeney, supra,* at 818. I disagree. Such an interpretation prescinds from the notion that exemption statutes should be liberally construed. "If Congress intended that the debtor's exemption in this circum-

---

**8.** The line of cases holding that a debtor may claim a state homestead exemption in a motor home has not been ignored by the Court. *See, e.g., Matter of Williams,* 24 F.Supp. 440 (D.Or. 1938); *In re Foley,* 97 F.Supp. 843 (D.Neb. 1951); *Matter of Moore, supra,* at 670. It is unclear whether a homestead can be declared in a motor home in Massachusetts. *See* G.L. c. 188 § 1 *et seq.* Even if such a right does exist, however, due to the above conclusion that the specific inclusion of an item of property under one provision of § 522(d) does not preclude its exemption under another applicable provision of subsection (d), such a right is irrelevant to the discussion at hand. If a debtor can declare a homestead in a tent, *see In re Foley, supra,* at 845–846, does that preclude its exemption under (d)(3)? I think not.

stance should be limited I believe it would have clearly expressed such intention. Such limitation is not found either in the legislative history or in the Act. In fact, the spillover provision of § 522(d)(5) is found to be more appropriate." *In re Eagan, supra,* at 455.

I recognize the detrimental effect that today's decision will have on creditors who hold nonpossessory, nonpurchase-money security interests in mobile homes which constitute both personal property and a debtor's residence. Balanced against this impact, however, is what I consider to be the paramount purpose of bankruptcy laws in this country since their inception: the preservation of those necessities which are essential to the health, safety and welfare of the debtor and his dependents so as to minimize the costs to society of the care and treatment of indigents. To rule otherwise today, would result in the creation of a potential class of debtors (mobile home dwellers) who will emerge from bankruptcy without the barest of necessities. Congress cannot have intended such a result. "It does not serve the public interest to enforce the expectation of the creditor at the expense of making the debtor a ward of the state." *Curry v. Associates Financial Services,* 11 BR. 716, 718 (N.D.Ohio, E.D., 1981).

Accordingly, the Trustee's objection is disallowed and the Debtor's claimed exemption in the motor home is allowed in full upon the Debtor's payment of the Trustee's fee and expenses associated with the avoidance of the lien upon the motor home. 11 U.S.C. § 522(k).

So Ordered.